Miscellaneous No._____

# United States Court of Appeals for the Federal Circuit

IN RE:

KIA CORPORATION AND KIA AMERICA, INC.,

*Petitioners.*

*On Petition for a Writ of Mandamus to the U.S. District Court for the Eastern District of Texas in Case No. 2:23-cv-00437-JRG, the Honorable Judge Rodney Gilstrap*

## PETITION FOR WRIT OF MANDAMUS

BRETT N. WATKINS
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
711 Louisiana Street, Suite 3900
Houston, Texas 77002
(713) 221-7000
brettwatkins@quinnemanuel.com

*Counsel for Petitioners*

WILLIAM B. ADAMS
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
williamadams@quinnemanuel.com

*Counsel for Petitioners*

D. JAMES PAK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
jamespak@quinnemanuel.com

JULY 24, 2024

*Counsel for Petitioners*

FORM 9. Certificate of Interest                                    Form 9 (p. 1)
                                                                    March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 24-

**Short Case Caption** IN RE KIA CORPORATION AND KIA AMERICA, INC., Petitioners

**Filing Party/Entity** Kia Corporation and Kia America, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/24/2024                Signature:  /s/ William B. Adams

                                Name:       William B. Adams

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Kia Corporation | | Hyundai Motor Company (owns over 10% of stock) |
| Kia America, Inc. | | Kia Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| Jeffrey S. Gerchick | Quinn Emanuel Urquhart & Sullivan, LLP | |
| Deron R. Dacus | The Dacus Firm, P.C. | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☑ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ................................................... v

RELIEF SOUGHT ................................................................................ 1

INTRODUCTION ................................................................................ 1

ISSUE PRESENTED ........................................................................... 3

FACTUAL BACKGROUND ............................................................... 3

    A.    Emerging Auto's Lawsuit Against Kia ................................... 3

        1.    The Patents-in-Suit And Accused Technology ........................... 3

        2.    Kia Witnesses And Documents Are Located In The CDCA ........................................................................ 4

        3.    Emerging Auto Is Located In California And Has No Connection To The EDTX ........................................ 6

        4.    Third-Party Witnesses Are Located In The CDCA ................... 6

    B.    Emerging Auto's Lawsuit Against Toyota ........................... 7

    C.    The District Court's Order Denying Kia's Motion To Transfer To The CDCA ................................................... 8

REASONS WHY THE WRIT SHOULD ISSUE ................................. 9

I.    MANDAMUS IS APPROPRIATE WHEN A DISTRICT COURT HAS CLEARLY ABUSED ITS DISCRETION IN DENYING TRANSFER ............................................................ 10

i

II.     THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN DENYING KIA'S MOTION TO TRANSFER ............................................12

    A.    The Co-Pending Toyota Case, Standing Alone, Cannot Outweigh Other Factors Favoring Transfer .......................................13

    B.    The "Availability Of Compulsory Process" Factor Is Not Neutral—It Strongly Favors Transfer ..................................................18

          1.    The District Court Erroneously Discounted Third-Party HAEA And Its Witnesses ..........................................................19

          2.    The District Court Erroneously Deemed Emerging Auto's Prior Art Witnesses To Offset HAEA And Its Witnesses ........22

    C.    The "Relative Access To Sources Of Proof" Factor Is Not Neutral—It Strongly Favors Transfer ..................................................24

    D.    The "Local Interest" Factor Does Not Favor Transfer Only "Slightly"—It Strongly Favors Transfer ...........................................28

CONCLUSION ........................................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ............................................................28

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
   No. 2:17-cv-00513, 2018 WL 2329752 (E.D. Tex. May 23, 2018)...................20

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ..............................................28, 30, 31

*In re Clark*,
   94 F.3d 502 (5th Cir. 2024) ....................................................................31

*In re DISH Network LLC*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) .................11, 14, 20

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) .......................................................16

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ...................................2, 11, 16, 19, 24

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...........................24

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) .....................................1, 11, 13, 14, 30

*In re Google LLC*,
   No. 2022-140, -141, -142, 2022 WL 1613192 (Fed. Cir. May 23,
   2022) .........................................................................................................11

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .........................................................29

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018)...............11, 17, 20

iii

*In re HP Inc.*,
    826 F. App'x 899 (Fed. Cir. 2020) .....................................................11, 20, 22, 28

*In re Netflix, Inc.*,
    No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022)....................11, 21, 27

*In re NetScout Systems, Inc.*,
    No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ............................18

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ....................................................................13, 24

*In re Planned Parenthood Federation of America*,
    52 F.4th 625 (5th Cir. 2022) .........................................................................19, 20

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) .................................................2, 11, 14, 15, 16, 29

*In re TikTok, Inc.*,
    85 F. 4th 352 (5th Cir. 2023) .............................................................................26

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014) .........................................................................17

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) .........................................................................10

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*)....................................10, 11, 12, 13, 28

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) .........................................................................15

## S<small>TATUTES</small>

28 U.S.C. § 1404(a) .........................................................................8, 10, 11, 12, 13

28 U.S.C. § 1651 .................................................................................................1

iv

## STATEMENT OF RELATED CASES

1.      No other appeal or writ proceeding in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court.

2.      Petitioners' counsel know of no case pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending writ proceeding.

## RELIEF SOUGHT

Pursuant to 28 U.S.C. § 1651, Petitioners Kia Corporation ("KC") and Kia America, Inc. ("KUS") (collectively, "Kia") seek a writ of mandamus directing the U.S. District Court for the Eastern District of Texas ("EDTX") to vacate its June 14, 2024 order denying transfer of this action and to transfer this action to the U.S. District Court for the Central District of California ("CDCA").

## INTRODUCTION

This patent infringement case involves parties, key witnesses, and critical evidence that are all located in the CDCA. KUS maintains its headquarters in the CDCA, and it is the location of key witnesses with knowledge of the accused technology, a key third-party supplier of the accused technology—Hyundai AutoEver America ("HAEA")—and the servers that it uses to implement that technology. Plaintiff-Respondent Emerging Automotive LLC ("Emerging Auto") is also based in California, and the named inventors on the asserted patents reside in California. In contrast, this case has no meaningful connection to the EDTX, and the district court seriously erred by keeping it there.

The district court clearly abused its discretion by disregarding this Court's decisions—in cases like this one that arose from district courts within the Fifth Circuit—that hold judicial economy considerations, standing alone, cannot override a clear case for transfer based on other factors. *See, e.g.*, *In re Google LLC*, 58 F.4th

1

1379, 1383 (Fed. Cir. 2023) ("*Google III*") (applying Fifth Circuit law); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (applying Fifth Circuit law). The district court recognized that multiple factors weigh in favor of transfer to the CDCA, including the convenience of willing witnesses, which this Court has recognized is the "***single most important factor***" in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (emphasis added). On the other side of the ledger, the court concluded that two factors weigh against transfer—***solely*** based on judicial economy considerations resulting from Emerging Auto's co-pending case against Toyota, which involves some overlapping patents but entirely different accused products. Aside from the Toyota case, the court identified no other reason to keep this case in the EDTX. That co-pending case is an insufficient basis to deny transfer under this Court's decisions.

The district court also clearly abused its discretion in deeming other factors "neutral" or only "slightly" favoring transfer. *First*, regarding the availability of compulsory process, the court erred in balancing third-party HAEA and its employees who were involved in design and development of the accused technology, and are in the CDCA, against the inventors on a single prior art patent that Emerging Auto cherry-picked from among hundreds of patents cited on the face of the Asserted Patents. *Second*, the court erred as to the location of sources of proof, where it is undisputed that documents regarding the accused technology and the servers

2

supporting that technology are in the CDCA, while none is in the EDTX. *Third*, the court erred in determining that the local interest in deciding local issues at home only "slightly" favors transfer, where the CDCA is the venue with the greatest ties to the events that gave rise to this lawsuit.

For these reasons and others set forth below, the Court should issue a writ of mandamus directing the district court to vacate its order and to transfer this case to the CDCA.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in declining to transfer this case from the EDTX to the CDCA.

## FACTUAL BACKGROUND

### A.    Emerging Auto's Lawsuit Against Kia

### 1.    The Patents-in-Suit And Accused Technology

In September 2023, Emerging Auto filed the underlying action in the EDTX, alleging that Kia is infringing three patents relating to electronic key technology: U.S. Patent Nos. 10,407,026 (the "'026 patent"), 11,738,659 (the "'659 patent"), and 9,365,188 (the "'188 patent") (collectively, the "Asserted Patents").  Appx45 (¶ 1). The named inventors of the Asserted Patents are Angel A. Penilla and Albert S. Penilla, who both reside in California.  Appx60; Appx132; Appx204.

3

The accused technology relates to the "Kia Connect and/or Digital Key" features and servers that enable these features. Appx48-49 (¶ 15); Appx52 (¶ 27); Appx55 (¶ 39).

### 2. Kia Witnesses And Documents Are Located In The CDCA

Petitioner KUS is a California corporation that has its principal place of business in Irvine, California. Appx277 (¶ 3). Approximately 490 employees work at KUS's office in Irvine. Appx281 (¶ 4). KUS distributes Kia vehicles to a nationwide network of independent dealers, and markets and provides support for these Kia vehicles sold throughout the United States. Appx281 (¶ 3).

KUS employees located in the CDCA are responsible for design and testing of the accused technology, marketing and support for that technology to customers throughout the United States, and nationwide sales and marketing of Kia vehicles. Appx277-278 (¶ 5). Kia identified two key KUS witnesses—Sujith Somasekharan, KUS's National Manager, Connected Car and Mobility, and Kimberly Lim, KUS's Senior Product Manager for the Digital Key feature—both of whom are located in the CDCA and are likely to possess relevant information and documents related to the accused technology. Appx277-278 (¶ 5). KUS's relevant documents relating to the accused technology and nationwide sales and marketing activities are also located in the CDCA. Appx281 (¶ 3). No KUS employees with responsibility for these activities are located in the EDTX, and no KUS documents relating to the

4

accused technology or sales and marketing of that technology are located in the EDTX.  Appx277-278 (¶¶ 5-6); Appx281-282 (¶¶ 3, 6); Appx299-300.

KUS has several regional offices across the United States that provide support to independent Kia dealers' sales and service activities in their respective regions. Appx281-282 (¶ 5).  One regional office is the Southwest Region office, located in Plano, Texas.  Appx281-282 (¶ 5).  KUS has approximately ten employees that regularly work at the Southwest Region office.  Appx282 (¶ 6).  Those employees' responsibilities involve providing support to independent Kia dealerships within the Southwest Region; no KUS employees located in the EDTX are responsible for the design, testing, marketing, or support of the accused technology, nor are they responsible for national sales, marketing, or support of Kia vehicles.  Appx277-278 (¶ 5); Appx282 (¶ 6).  And there is no indication that anyone in the EDTX has access to documents relating to design and development of the accused technology, which are stored in and accessible from the CDCA.

KUS is a wholly-owned subsidiary of KC, a Korean corporation that has its principal place of business in Seoul, Republic of Korea.  Appx285 (¶ 3).  KC does not have any offices or employees in Texas.  Appx285 (¶ 4).  KC employees with knowledge of the accused technology are based in Korea, not in Texas.  Appx285 (¶ 5).

5

### 3.     Emerging Auto Is Located In California And Has No Connection To The EDTX

Emerging Auto is a California limited liability company that has its principal place of business in Scotts Valley, California, which is approximately 300 miles from the CDCA and over 1,600 miles from the EDTX.  Appx45 (¶ 2); Appx290 (¶¶ 2-3).  Emerging Auto's two members are the named inventors on the three asserted patents, Angel A. Penilla and Albert S. Penilla, who also reside in California.  Appx290 (¶¶ 2-3).  Emerging Auto has identified no connections with the EDTX in its complaint or opposition to Kia's motion to transfer.

### 4.     Third-Party Witnesses Are Located In The CDCA

For technical development of the accused technology, including design and development of source code for that technology, Kia works with third parties including HAEA, Hyundai AutoEver Corporation ("HAEC"), and Hyundai Motor Group's Research and Development organization ("HMG R&D").  Appx278-279 (¶ 7).  HAEC and HMG R&D are located overseas, but the HAEA employees with whom Kia works on this technology are located in the CDCA, not in the EDTX. Appx278-279 (¶ 7).  Servers that support the back-end functionality for the accused technology, which are owned and maintained by HAEA or HAEC, are in the CDCA and in Korea.  Appx279 (¶ 8).  None of those servers is in the EDTX.  Appx279 (¶ 8).  There no indication that any potential witnesses in the EDTX have access to these servers or the source code developed by these third parties.

### B.    Emerging Auto's Lawsuit Against Toyota

Emerging Auto also filed a suit for patent infringement against various Toyota entities in the EDTX.    Appx365-386.    In December 2023, the district court consolidated Emerging Auto's cases against Kia and Toyota for pretrial purposes. Appx274-275.

In the Toyota case, Emerging Auto asserts five patents, three of which it also asserts against Kia; the two patents that it does not assert against Kia are U.S. Patent Nos. 9,171,268 and 11,396,244.    Appx365 (¶ 1).    Emerging Auto's infringement allegations against Toyota are based on accused products that are unrelated to the accused Kia products.    Emerging Auto has contended that the accused technology in the Toyota and Kia cases is "substantially similar," but has cited no evidence to support this assertion.    Rather, Emerging Auto has relied on its own infringement contentions, which confirm each case involves different accused products and services.    *Compare* Appx334-338 (accusing "Toyota's vehicles (including Toyota-branded and Lexus-branded vehicles) that are compatible with Remote Connect functionality and/or Digital Key functionality"), *with* Appx324-326 (accusing "Kia's vehicles that are compatible with Kia Connect (including UVO Link / Kia Access) functionality and/or Digital Key functionality (including Digital Key 2, Digital Key 2 Touch and other marketing variants)").    Given that the cases involve

7

distinct products and technology, it is unlikely that there will be much, if any, overlap in the substantive facts and discovery performed in each case.

### C.    The District Court's Order Denying Kia's Motion To Transfer To The CDCA

In January 2024, Kia filed a motion under 28 U.S.C. § 1404(a) to transfer this case to the CDCA, arguing that four transfer factors weighed strongly in favor of transfer and the remaining four factors were neutral.

Emerging Auto requested and was granted venue discovery, serving several interrogatories and requests for production, and Kia responded to those discovery requests.  Appx287-288.  Emerging Auto also requested a limited number of depositions on venue issues; Kia agreed to that request, but Emerging Auto chose not to take any venue depositions.  Appx287-288.

Emerging Auto opposed Kia's motion, relying on KUS employees that work at or near KUS's Southwest Region office in Texas and documents stored at that office.  However, none of the KUS employees identified by Emerging Auto has knowledge of the accused technology, nor do any of the documents stored at KUS's Southwest Region office relate to that technology.  Appx277-278 (¶ 5); Appx298; Appx300.

Even though the center of gravity of this case is clearly in the CDCA, the district court denied Kia's motion to transfer on June 14, 2024.  Appx1-32.  The court concluded that one factor (cost of attendance for willing witnesses) favored

transfer; one factor (local interest in having localized interests decided at home) "slightly" favored transfer; one factor (practical problems) weighed "materially" against transfer; one factor (court congestion) weighed "slightly" against transfer; and the remaining factors were neutral, such that the CDCA is not a "clearly more convenient" forum. Appx31.

For the two factors that the district court found weigh against transfer, the court relied solely on judicial economy based on the co-pending Toyota case. Appx22-27. The court first concluded that the "all other practical problems" factor weighs "materially against" transfer due to the Toyota case. Appx22-25. And the court concluded that the "court congestion" factor weighs against transfer—but only "slightly"—because "the practical effect of transferring the case against the Kia Defendants would be to duplicate these proceedings." Appx25-27.

## REASONS WHY THE WRIT SHOULD ISSUE

Kia has a clear and indisputable right to mandamus relief because the district court clearly abused its discretion by making legally and factually erroneous rulings on multiple transfer factors, including the availability of compulsory process, the relative ease of access to sources of proof, and the local interest in deciding local issues at home.

But even if the district court assessed the individual factors correctly, its weighing of those factors was legally erroneous because—in conflict with other

decisions of this Court applying Fifth Circuit law—it relied solely on judicial economy relating to the co-pending Toyota case to overcome a clear case for transfer. As described above, the court found that the "most important" factor (cost of attendance for willing witnesses) weighed in favor of transfer, and another factor (local interest in having localized interests decided at home) slightly favored transfer. Aside from the two factors for which it found the Toyota case to be decisive, the court found *no other factor* weighed against transfer. Thus, the court relied on judicial economy to override a clear case for transfer based on other factors, directly contrary to this Court's decisions in other cases decided under Fifth Circuit law, and in doing so failed to give the witness convenience factor the greater weight that this Court requires.

These errors led to the patently erroneous result that the case will remain in a district that is inconvenient to the parties and lacks any material connection to the events that gave rise to the case.

## I.     MANDAMUS IS APPROPRIATE WHEN A DISTRICT COURT HAS CLEARLY ABUSED ITS DISCRETION IN DENYING TRANSFER

Under governing Fifth Circuit law, "mandamus is an appropriate means of testing a district court's § 1404(a) ruling." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"); *see In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying *Volkswagen II* in granting mandamus petition directed to EDTX). A petitioner seeking mandamus relief must

show that (1) it has "no other adequate means to attain the relief [it] desires"; (2) it has a "clear and indisputable" right to the writ; and (3) "the writ is appropriate under the circumstances." *Volkswagen II*, 545 F.3d at 311.

The first requirement is satisfied where a district court improperly denies transfer under § 1404(a). "[I]t is clear under Fifth Circuit law that a party seeking mandamus for a denial of transfer clearly meets the 'no other means' requirement." *Genentech*, 566 F.3d at 1345. The second and third requirements are met where there has been a "clear abuse of discretion." *Volkswagen II*, 545 F.3d at 310. A district court clearly abuses its discretion when it reaches a "patently erroneous result" by relying on clearly erroneous factual findings, erroneous conclusions of law, or misapplications of law to fact. *Id*.

Applying the "clear abuse of discretion" standard in the transfer context, this Court has on numerous occasions granted mandamus relief from orders denying § 1404(a) transfers from district courts within the Fifth Circuit. *See, e.g., Google III*, 58 F.4th 1379; *Samsung*, 2 F.4th 1371; *In re Google LLC* ("*Google II*"), No. 2022-140, -141, -142, 2022 WL 1613192 (Fed. Cir. May 23, 2022); *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022); *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021); *In re HP Inc.*, 826 F. App'x 899 (Fed. Cir. 2020); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018). It should do the same here, as further explained below.

11

## II. THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN DENYING KIA'S MOTION TO TRANSFER

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The remedy under § 1404(a) "is simply a transfer of the case within the federal system to another federal venue more convenient to the parties, the witnesses, and the trial of the case." *Volkswagen II*, 545 F.3d at 313.

The threshold question in the § 1404(a) analysis is whether the case "might have been brought" in the destination venue. Here, the district court found this requirement satisfied, and Emerging Auto does not dispute that this case could have been filed in the CDCA. Appx4.

Fifth Circuit law next requires the court to weigh well-established public and private interest factors. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the

12

law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

The plaintiff's choice of venue is entitled to no weight as "an independent factor" in the venue-transfer analysis, merely serving as a reminder that it is the movant who bears the burden of showing good cause for transfer. *Id.* at 314-15 & n.10. "When the movant demonstrates that the transferee venue is clearly more convenient, … it has shown good cause and the district court should therefore grant the transfer." *Id*. at 315.

Here, because "the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff," the case should be transferred pursuant to § 1404(a). *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).

## A.    The Co-Pending Toyota Case, Standing Alone, Cannot Outweigh Other Factors Favoring Transfer

The district court determined that only two factors weigh against transfer—the "all other practical problems" and "court congestion" factors. Appx22-27. For both factors, the district court's determination was based solely on judicial economy considerations due to the co-pending Toyota case. Appx22-27.

This Court has held in multiple cases applying Fifth Circuit law that potential benefits to judicial economy from keeping co-pending cases together cannot outweigh a clear case for transfer based on other factors. *See Google III*, 58 F.4th at 1383 ("[I]mportantly, judicial economy considerations could not undermine the

13

clear case for transfer in light of the imbalance on the other factors."); *Samsung*, 2 F.4th at 1380 ("incremental gains" in judicial economy and risk of inconsistent judgments were not sufficient "to justify overriding the inconvenience to the parties and witnesses"); *DISH Network*, 2021 WL 4911981, at *3-*4 ("[W]hile we recognize that judicial economy can serve important ends in a transfer analysis, we have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor.").  Here, the district court acknowledged this Court's holding in *Google III* that judicial economy "*standing alone* cannot justify a denial of transfer in view of a 'clear case for transfer in light of the imbalance on the other factors.'"  Appx23 (quoting 58 F.4th at 1383).  But the court proceeded not to follow that holding.

This Court's decision in *Samsung* is instructive and shows the district court's clear error here.  There, this Court granted mandamus directing the Western District of Texas to transfer a case against Samsung to the Northern District of California, despite a co-pending case in the Western District against Bumble that involved overlapping patents.  *Samsung*, 2 F.4th at 1379-80.  This Court concluded that "the district court overstated the concern about wasted judicial resources and potential inconsistent results in light of plaintiffs' separate infringement suit against Bumble," noting that "[o]nly two of the patents in these cases overlap with those in the action brought against Bumble," and "the Bumble case involves an entirely different

underlying application." *Id.* Taking that into account along with other factors favoring transfer, this Court granted Samsung's petition and ordered transfer to the Northern District of California. *Id*. at 1379-81.

Similarly, here there are only three patents that overlap with the Toyota case, while two additional patents are asserted against Toyota. Appx45 (¶ 1); Appx365 (¶ 1). Emerging Auto argued in its opposition to Kia's transfer motion that the accused technologies in the Toyota and Kia cases are "substantially similar," but Emerging Auto cited no evidence to support that assertion, and its own infringement contentions confirm that the accused products in the two cases are distinct. Appx324-326; Appx334-338. The district court relied on this assertion and erroneously assumed that Kia did not dispute it. Appx24 n.17. To the contrary, as the court had already recognized, Kia had argued (and shown) that Kia and Toyota are separate entities and Emerging Auto's infringement allegations in the two cases are based on distinct, unrelated accused products. *See* Appx22-23; *see also supra*, at 7-8. Thus, as Kia explained, it is unlikely that there will be much, if any, overlap in the substantive facts and discovery performed in each case. *See Samsung*, 2 F.4th at 1380 ("[I]t is 'likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.'") (quoting *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

But even if the accused technologies were "substantially similar" (they are not), that would not justify a departure from this Court's decisions holding that co-pending cases cannot overcome a clear case for transfer. This Court has explained, on multiple occasions, that "to the extent that there are remaining overlapping invalidity *or infringement issues*, 'the MultiDistrict Litigation Procedures exist to effectuate this sort of efficiency.'" *Samsung*, 2 F.4th at 1380 (quoting *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013)) (emphasis added). Thus, even if there were overlapping infringement issues between the two cases, the district court legally erred by relying on the Toyota case alone to override the inconvenience to the parties and witnesses associated with keeping this case in the EDTX.

Here, there is a clear case for transfer based on the district court's rulings as to the other factors. The district court correctly found that the convenience of willing witnesses weighs in favor of transfer, Appx22, which this Court has recognized is the "***single most important factor***" in the transfer analysis, *Genentech*, 566 F.3d at 1343. The court also ruled the local interest factor weighs "slightly" in favor of transfer. Appx30. And, aside from the two factors for which the Toyota case was decisive, the district court found ***no other factor weighing against transfer***. Appx30-31. Thus, the district court's own analysis confirms that there is a "clear case for transfer" based on multiple factors weighing in favor of transfer and no

16

factors weighing against transfer, aside from the judicial economy considerations based on the Toyota case.

That this imbalance presents a "clear case" for transfer is further confirmed by prior decisions of this Court that have granted transfer where a limited number of factors favored transfer. For example, in *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014), the district court determined that the ease of access to sources of proof and local interest factors weighed in favor of transfer, while other factors were neutral. This Court questioned the district court's "neutral" determination regarding other factors, but nonetheless held that it "need not draw any definitive conclusion … about the district court's determination in that respect." *Id*. This Court concluded that, "[t]aken on its own terms, the district court's analysis presents a clear overall picture: nothing favors the transferor forum, whereas several factors favor the transferee forum." *Id*. at 1341 ("The analysis may not show that the transferee forum is *far* more convenient. But that is not what is required. With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'") (emphasis original). This Court thus held that "[i]n these circumstances, the district court's no-transfer conclusion was a clear abuse of discretion." *Id*.; *see In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) (holding court's determination that the access to sources of proof and the local interest factors favored transfer was "more

17

than sufficient" to establish good cause to transfer); *In re NetScout Systems, Inc.*, No. 2021-173, 2021 WL 4771756, *3-*5 (Fed. Cir. Oct. 13, 2021) (granting mandamus petition where willing witness and local interests factors favor transfer, and location of sources of proof slightly favors transfer). Likewise, here, the district court's reliance on the Toyota case to override the clear case for transfer to the CDCA was legally erroneous and a clear abuse of its discretion.

But even if the district court's rulings are not sufficient to grant the petition, as discussed in Parts II.B-D below, the district court committed clear error in concluding that the availability of compulsory process, the relative ease of access to sources of proof, and the local interest do not each weigh strongly in favor of transfer. With any of those clear errors corrected, the balance of factors unmistakably favors transfer.

### B. The "Availability Of Compulsory Process" Factor Is Not Neutral— It Strongly Favors Transfer

The district court clearly abused its discretion in ruling that the availability of compulsory process for non-party witnesses is neutral because "neither party has established that either forum would be more convenient than the other due to its ability to compel witnesses." Appx12. The availability of compulsory process weighs heavily in favor of the CDCA.

18

### 1.    The District Court Erroneously Discounted Third-Party HAEA And Its Witnesses

"The fact that the transferee venue is a venue with usable subpoena power … weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. Here, it is undisputed that Kia works with HAEA, a non-party located in the CDCA, for technical development of the accused technology. Appx278-279 (¶ 7). It is also undisputed that the HAEA employees with whom Kia works on this technology are located in the CDCA. Appx278-279 (¶ 7). And there is no dispute that HAEA operates servers that support the back-end functionality for the accused technology, which are located in the CDCA. Appx279 (¶ 8). In contrast, none of the HAEA employees that Kia works with on technical development of the accused technology, and none of the HAEA servers that support the accused technology, is in the EDTX. Appx278-279 (¶¶ 7-8).

The district court committed several clear legal and factual errors in discounting non-party HAEA and its witnesses in its analysis of this factor. *First*, the court erred as a matter of law in ruling that this factor was neutral because it had "no way of knowing … whether any such [HAEA employee] witnesses would be unwilling and require compulsory process." Appx9. The district court relied on the Fifth Circuit's recognition in *In re Planned Parenthood Federation of America*, 52 F.4th 625 (5th Cir. 2022), that this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* at 630-31. But

*Planned Parenthood* does not stand for the proposition that this factor should receive *no* weight in such circumstances. *Id.*[1]  Even if HAEA's witnesses are not presumptively unwilling, this factor should nonetheless receive ***some*** weight in view of the importance of HAEA and its employees to this case. The district court's contrary assumption was legally erroneous.

*Second*, the district court erred as a matter of law and fact in faulting Kia for not having identified specific HAEA employees that are expected to testify at trial. Appx9.  As this Court has held, third-party entities should not be discounted in the transfer analysis merely because their individual employees are not identified. *HP*, 826 F. App'x at 903 ("there was no basis to discount [third party] entities just because individual employees were not identified").  Kia provided specific information regarding the role of HAEA and its other suppliers in designing and developing the accused technology. *See infra*, at 21-22.  That information establishes—and it is undisputed—that employees of HAEA with knowledge of the accused technology are located in the CDCA, and no such employees are located in

---

[1]  This Court has held, and the district court itself has previously recognized that, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *HP*, 2018 WL 4692486, at *3 n.1 (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513, 2018 WL 2329752, at *6 (E.D. Tex. May 23, 2018)); *see DISH Network*, 2021 WL 4911981, at *3 (same).

the EDTX.  It would be unreasonable to require more at the stage of litigation when a transfer motion must be filed and ruled on.  *Netflix*, 2022 WL 167470, *3.

*Third*, the district court clearly erred in concluding that the Declaration of Mr. Somasekharan lacks sufficient detail regarding HAEA and its witnesses.  Appx10. The court's statement that the "only evidence in the record" is a "single sentence" from that declaration is simply inaccurate.  Appx10.  Mr. Somasekaran's declaration provided two paragraphs describing the role of HAEA and other third parties in developing the accused technology, as well as their roles in operating servers that support that technology.  Appx278-279 (¶¶ 7-8).  The declaration explains that employees of Hyundai AutoEver (which includes HAEA) are responsible for the technical development of the accused technology, "including performing all necessary source code design and development."  Appx278-279 (¶ 7).  Mr. Somasekharan further confirmed that the HAEA employees with whom Kia works on these technologies are "predominantly located in the Los Angeles area." Appx278-279 (¶ 7).  The district court took issue with Mr. Somasekharan's use of the word "predominantly," but the very next sentence of the declaration, which the district court failed to acknowledge, clarifies that "*[n]one* of the Hyundai AutoEver or HMG R&D employees with whom we work on technical development of Kia Connect or Digital Key are located in Texas."  Appx278-279 (¶ 7) (emphasis added). Thus, Mr. Somasekharan's declaration establishes—*and it is undisputed*—that

HAEA and its employees are in the CDCA, they have relevant knowledge of the accused technology, and there are no such HAEA employees with relevant knowledge in the EDTX. Emerging Auto could have tested these undisputed facts through the venue depositions to which Kia agreed, but it chose not to do so.

*Lastly*, the district court disregarded that Mr. Somasekharan also explained that Hyundai AutoEver (which, again, includes HAEA) owns and operates the servers that support the back-end functionality for the accused technology, and those servers are physically located in the CDCA. Appx279 (¶ 8); Appx299-300. This is also undisputed, and further confirms that HAEA and its employees are likely to have key information and knowledge regarding the accused technology. Based on the evidence presented by Kia, the district court should have found that the presence of HAEA and its witnesses in the CDCA weighs significantly in favor of transfer. *See, e.g.*, *HP*, 826 F. App'x at 902-03.

### 2.    The District Court Erroneously Deemed Emerging Auto's Prior Art Witnesses To Offset HAEA And Its Witnesses

The district court also clearly abused its discretion in determining that the "third-party prior art witnesses" identified by Emerging Auto completely offset third-party HAEA and its witnesses to render the compulsory-process factor neutral. Appx11-12. Emerging Auto relied on a single patent among the hundreds of references cited in its own patents because that patent happens to have inventors located in Texas. *See* Appx8.

These prior art witnesses are entitled to minimal, if any, weight in the transfer analysis for several reasons. *First*, the witnesses are named inventors on a single patent—U.S. Patent No. 8,816,845—that is not discussed in the Asserted Patents and is merely listed in the "References Cited" section among hundreds of other cited references. Appx60-64; Appx132-136; Appx204-207. *Second*, there is no indication that the '845 patent itself has any relevance to this case; it relates to detection of children in car seats, not electronic key systems. Appx344. *Third*, these prior art witnesses' relevance to the case, if any, would relate to *invalidity* of the asserted patents. This an obvious attempt by Emerging Auto to manufacture a third-party connection with the transferor forum where none exists, merely for purposes of opposing transfer. The district court's determination to nevertheless give weight to these witnesses in the transfer analysis was well outside the range of reasonable discretion.

But even if these prior art witnesses have some relevance here, the district court still clearly abused its discretion in relying on them to completely offset the third party (HAEA) whose witnesses actually work on development of the accused technology. For the reasons set forth above, HAEA and its witnesses should have tipped this factor heavily in favor of transfer, even if the prior art witnesses identified by Emerging Auto were considered.

**C.    The "Relative Access To Sources Of Proof" Factor Is Not Neutral—It Strongly Favors Transfer**

The district court also clearly abused its discretion in concluding that the "relative ease of access to proof factor" is neutral—not strongly in favor of transfer. Appx4-6.

The "relative ease of access to proof" factor requires consideration of the location of documents and physical evidence. *See Genentech*, 566 F.3d at 1345-46. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Nintendo*, 589 F.3d at 1199.  Thus, a district court errs in not "considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, *2 (Fed. Cir. Nov. 15, 2021) ("*Google I*").

Here, technical and non-technical evidence relevant to this case is maintained in the CDCA, where the custodians of those documents are also located.  Appx277-278 (¶¶ 5-6); Appx281 (¶ 3).  Specifically, it is undisputed that KUS employees responsible for design and testing of the accused technology, marketing and support for the accused technology, and nationwide sales and marketing of Kia vehicles are located at its headquarters in Irvine, California.  Appx277-278 (¶¶ 5-6); Appx281 (¶ 3).  It is also undisputed that non-party HAEA is located in the CDCA, where it

will likely have evidence relevant to the design and development of the accused technology, as well as operation of the servers that support that technology, which are themselves located in the CDCA.  Appx278-279 (¶¶ 7-8).

In contrast, no documents relating to design and development of the accused technology or sales and profitability information regarding that technology are in the EDTX.  Appx278 (¶ 6).  KUS's Southwest Region office has a server storing documents relating to sales and marketing of Kia vehicles within the Southwest Region, but KUS maintains information regarding *nationwide* sales and marketing at its headquarters in the CDCA.  Appx281 (¶ 3).  Thus, on balance, the "relative ease of access to sources of proof" factor weighs strongly in favor of transfer.

The district court erred in balancing the evidence stored in the CDCA relating to the accused technology with the limited sales and marketing documentation stored in the EDTX to find this factor neutral, for multiple reasons.  Appx5-6.  *First*, the court incorrectly stated that "neither party asserts that any physical documents or evidence exist in either district."  Appx5.  As explained in Kia's motion and in Mr. Somasekharan's declaration, servers that support the back-end functionality for the accused technology (which are distinct from servers that merely store documents) are physically located in Irvine and Los Angeles, California.  Appx279 (¶ 8).  Those servers are operated by HAEA and its employees that are located in the CDCA; because there are no HAEA or KUS employees in the EDTX that work on the

25

accused technology, those servers are not accessible by anyone in the EDTX. Appx277-279 (¶¶ 5, 7-8).  As a result, those servers are key evidence that is not "equally accessible in either forum."  *In re TikTok, Inc.*, 85 F. 4th 352, 359 (5th Cir. 2023) (holding district court erred in finding this factor neutral where source code was only accessible to employees located overseas and in the transferee venue).

*Second*, the district court's statement that "Defendants contend that relevant information related to the accused technology is maintained electronically in CDCA and Plaintiff contends that documents related to the sales and marketing of the accused Kia vehicles exist in EDTX" is incomplete.  Appx6.  KUS maintains documents in the CDCA relating to sales and marketing of the *accused technology* (separate from Kia's vehicles), as well as nationwide sales and marketing of *Kia's vehicles generally*.  Appx277-278 (¶¶ 5-6); Appx281 (¶ 3); Appx299-300.  In contrast, the documents stored at Kia's Southwest Region office merely relate to sales and marketing of Kia vehicles generally, within one region—they do not relate to design, development, sales, or profitability of the *accused technology*.  Appx278 (¶ 6); Appx299-300.  Even if the general sales and marketing documents located in Texas were relevant to this case, the district court erroneously failed to consider that KUS *also* maintains such documents at its headquarters in Irvine.  Appx281 (¶ 3).  Thus, documents relating to the same subject matter stored at KUS's Southwest Region office should not impact this factor because KUS maintains that same

information in the CDCA as well.  *See Netflix*, 2022 WL 167470, *2-*3 (rejecting district court's reliance on contracts in the EDTX where it had not been shown that the contracts were not also available at defendant's headquarters in the transferee venue).

*Lastly*, even if the documents stored at KUS's Southwest Region office do weigh on this factor, the district court still clearly abused its discretion in relying on them to completely offset the documents relating to design, testing, marketing and sale of the accused technology, and the servers that support that technology, all of which are located in the CDCA.  Appx6.  Those documents are located in the CDCA, not in the EDTX, and there is no evidence that any potential witnesses in the EDTX have access to them.  Given the nature of the documents stored at KUS's Southwest Region office in Texas, they are not entitled to the same weight as the technical documentation stored at KUS's headquarters in the CDCA and the servers that support the accused functionality, also located in the CDCA.  *Netflix*, 2022 WL 167470, at *2-*3 (rejecting district court's "sources of proof" determination that "rested, at bottom, on its improper disregard of the potential sources of proof in the [transferee district]").  The sources of proof located in the CDCA thus should have tipped this factor heavily in favor of transfer, even if the documents stored at KUS's Southwest Region office were considered.

### D.    The "Local Interest" Factor Does Not Favor Transfer Only "Slightly"—It Strongly Favors Transfer

The district court also erred as a matter of law and thus clearly abused its discretion in concluding that the local interest in deciding local issues at home only "slightly" favors transfer because "both districts have localized ties to this case." Appx27-30.  The local interest factor weighs heavily in favor of the CDCA because the accused technology was designed, tested, and supported from the CDCA (in addition to the Republic of Korea), and key Kia and third-party witnesses with knowledge of these activities are located in the CDCA.

The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'"  *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) ("*Apple III*") (emphasis original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); citing *Volkswagen II*, 545 F.3d at 318; *HP*, 826 F. App'x at 901, 903-04).

Here, the CDCA is clearly the venue with the greatest ties to the events that gave rise to this lawsuit.  Most importantly, Kia's U.S.-based activities related to the accused technology, and key witnesses with knowledge of that technology, are centered in the CDCA, not in the EDTX.  Appx277-278 (¶¶ 4-6).  KUS's employees in CDCA also have knowledge and responsibilities relating to the marketing and sale of the accused technology throughout the United States.    Appx277-278 (¶ 5);

28

Appx281 (¶ 3); Appx298.   HAEA, Kia's third-party supplier for the accused technology, is also located in the CDCA, as are its employees that work on that technology.  Appx278-279 (¶¶ 7-8).  The district court wrongly disregarded HAEA because it is a third party.  Appx28-29.  As this Court held in *Samsung*, the presence of third parties that "researched, designed, and developed" the accused technologies are "significant factors" that give the transferee forum "a legitimate interest in adjudicating the cases 'at home.'"  2 F.4th at 1380 (applying Fifth Circuit law).

Emerging Auto itself is also a California company, and the two named inventors on the asserted patents reside in California.  Appx290 (¶¶ 2-3).  Emerging Auto did not even attempt to point to any connections between itself and the EDTX.  As a result, the CDCA's local interest in this case is especially strong because it "calls into question the work and reputation of several individuals residing in or near that district."  *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (applying Fifth Circuit law).

In contrast, this case has no connection to the EDTX that could not be drawn to any other district.  In concluding that this factor only "slightly" favors transfer, the district court stated that "[i]n addition to selling the accused vehicles in this District, Defendant KUS also employs six individuals with relevant knowledge in or near this District."  Appx29.  The court also noted that "these identified individuals' actions may evidence Plaintiff's induced infringement allegations."  Appx29.  But

29

the record shows that none of those six individuals has any involvement in ***the technology at issue in this lawsuit***. Appx17-18; Appx277-278 (¶ 5); Appx298-299. Instead, their job responsibilities relate to provision of general sales and marketing support to Kia's independent dealerships within the Southwest Region, which is the same support that Kia's other regional offices provide to independent Kia dealerships ***throughout the United States***. Appx17-18; Appx281-282 (¶¶ 5-6); Appx298-299.

This Court rejected a similar district court ruling in *Apple III*, 979 F.3d 1332. There, the district court ruled that the local interest factor was neutral because Apple, whose headquarters is in the Northern District of California, planned to build "a second campus in Austin," giving it "substantial presences in both NDCA and WDTX." *Id.* at 1344 (citation omitted). Applying Fifth Circuit law, this Court held that the district court "misapplied the law to the facts" by "so heavily weighing Apple's general contacts with the forum that are untethered to the lawsuit, such as Apple's general presence in WDTX." *Id*. at 1345. What should have mattered, this Court explained, were "the 'significant connections between NDCA and ***the events that gave rise to a suit***,'" such as the plaintiff's "'presence in NDCA' and absence from WDTX" and the fact that Apple developed and designed the accused products "in NDCA." *Id*. (citations and brackets omitted); *see Google III*, 58 F.4th at 1384-85 (applying Fifth Circuit law and holding local interest favored transfer where

patented technology invented in and prosecuted from transferee forum, and accused technology developed in transferee forum).

The same is true here. Just as in *Apple III*, Kia's Southwest Region office was not involved in the design or development of the allegedly infringing functionality. Appx277-278 (¶¶ 4-6). Rather, that conduct occurred in the CDCA, where KUS is headquartered, as well as overseas. Appx277-279 (¶¶ 4-8). Just as in *Apple III*, "this factor weighs in favor of transfer." 979 F.3d at 1345.

The district court also erred by relying on dealer sales and support activities that Kia engages in throughout the United States in analyzing the local interest factor. As the Fifth Circuit recently explained, "[a] completely diffuse interest—that is, an interest that 'could apply to virtually any judicial district or division in the United States'—cannot affect the local-interest determination." *In re Clark*, 94 F.3d 502, 511 (5th Cir. 2024). Here, it is undisputed that the purported local interests in the EDTX relating to sales and marketing support provided to independent Kia dealerships is the same support that KUS provides to dealers throughout the United States, including in the CDCA. Appx281-282 (¶¶ 5-6). Thus, these purported "local interests" are, at best, the same in both the EDTX and the CDCA, and therefore "net out to zero—neither favoring nor disfavoring transfer." *Clark*, 94 F.3d at 511. Because the remaining local interests are strongly in favor of the CDCA as explained

above, the district court clearly abused its discretion in not concluding that this factor weighs strongly in favor of transfer.

## CONCLUSION

This Court should grant Kia's petition, vacate the district court's order, and remand with instructions to transfer this case to the CDCA.

Dated: July 24, 2024                              Respectfully submitted,

Brett N. Watkins                                  */s/ William B. Adams*
QUINN EMANUEL URQUHART                            William B. Adams
  & SULLIVAN, LLP                        QUINN EMANUEL URQUHART
700 Louisiana Street, Suite 3900                    & SULLIVAN, LLP
Houston, Texas 77002                              51 Madison Avenue, 22nd Floor
Telephone:  (713) 221-7000                        New York, New York 10010
Facsimile:   (713) 221-7100                       Telephone:  (212) 849-7000
                                                  Facsimile:   (212) 849-7100

                                                  D. James Pak
                                                  QUINN EMANUEL URQUHART
                                                    & SULLIVAN, LLP
                                                  865 S. Figueroa Street, 10th Floor
                                                  Los Angeles, California 90017
                                                  Telephone:  (213) 443-3000
                                                  Facsimile:   (213) 443-3100

*Counsel for Petitioners*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 24-

**Short Case Caption:** IN RE: KIA CORPORATION AND KIA AMERICA, INC., Petitioners.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 7,417 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/24/2024                Signature: /s/ William B. Adams

                                Name: William B. Adams

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 24-

**Short Case Caption** IN RE: KIA CORPORATION AND KIA AMERICA, INC., Petitioners.

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  07/24/2024

by ☐  U.S. Mail    ☐  Hand Delivery    ☐ Email    ☐ Facsimile
☑  Other:  FedEx

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Hon. Rodney Gilstrap | Sam B. Hall, Jr. Federal Building and United States Courthouse<br>100 East Houston Street<br>Marshall, Texas 75670 |
| Aaron R Hand, Brenda Entzminger,<br>Jerry Tice , II, Marc Belloli, Margaret Elizabeth Day,<br>Bunsow, De Mory LLP-Redwood | 701 El Camino Real<br>Redwood City, CA 94063<br>650.351.7244<br>ahand@bdiplaw.com, bentzminger@bdiplaw.com, jtice@bdiplaw.com, mbelloli@bdiplaw.com, eday@bdiplaw.com |
| Andrea Leigh Fair<br>Ward, Smith & Hill, PLLC | 1507 Bill Owens Parkway<br>Longview, TX 75604<br>903-757-6400<br>andrea@wsfirm.com |
| | |
| | |

☐    Additional pages attached.

Date: 07/24/2024

Signature:  /s/ William B. Adams

Name:    William B. Adams